IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VERONICA M. H., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY,[1] )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 23-CV-195-MTS |

## OPINION AND ORDER

Plaintiff Veronica M. H. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education,

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant— taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g). A court's review is limited to two inquiries: 1) whether the correct legal standards were applied; and 2) whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On August 14, 2018, Plaintiff filed an application for disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under Title II of the SSA. (R. 161–62). She alleged an inability to work beginning on July 4, 2017, due to limitations resulting from chronic lower back pain with bilateral leg pain, restless leg syndrome, carpal tunnel syndrome in both wrists, diabetes, obesity, asthma/allergies, chronic shoulder pain, and pain in her ribs.[2] (R. 161, 171, 182). Plaintiff was fifty-five years old at the time of the ALJ's decision. (R. 178, 463). She has at least a high school education and past relevant work as a wire harness assembler, waitress, certified nursing assistant,

---

[2] Plaintiff originally alleged an inability to work beginning on January 1, 2013, before amending the alleged onset date to July 4, 2017. (*See* R. 171).

3

and small parts assembler. (R. 462).

Plaintiff's application was denied both initially and upon reconsideration. (R. 74–93). On December 13, 2019, ALJ Christopher Hunt issued a decision denying benefits and finding Plaintiff not disabled. (R. 12–28). Plaintiff sought review by the Appeals Council, which was denied on July 15, 2020. (R. 1–6). Plaintiff then filed suit in district court and the case was remanded to the Social Security Administration for further proceedings and a new hearing on March 9, 2022. (R. 551–60). On May 23, 2022, the Appeals Council issued a remand order vacating the Commissioner's decision and remanding the case for further proceedings. (R. 563).

ALJ Hunt then conducted a second administrative hearing on December 20, 2022. (R. 469–85). The hearing was held via teleconference pursuant to COVID-19 procedures. (R. 455, 566–68). ALJ Hunt issued a decision on January 16, 2023, denying benefits and finding Plaintiff not disabled. (R. 452–68). The Appeals Council did not assume jurisdiction and Plaintiff did not file written exceptions disagreeing with the hearing decision. *See* 20 C.F.R. § 404.984. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. *Id.*

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since July 4, 2017. (R. 457). At step two, he found Plaintiff suffered from the severe impairments of right knee osteoarthritis, spondylosis L5-S1, and morbid obesity. (R. 458). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. *Id.* Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work" with the following additional limitations:

> [E]xcept occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling. No climbing ladders, ropes, or scaffolding or unprotected heights and only occasional operation of pedals and foot controls.

(R. 459).

At step four, after consultation with a vocational expert, the ALJ determined Plaintiff was able to perform her past relevant work as a wire harness assembler, waitress, and small parts assembler. (R. 462). As a result, the ALJ found Plaintiff had not been under a disability from July 4, 2017, through December 31, 2017, the date Plaintiff was last insured. (R. 463).

## Errors Alleged for Review

Plaintiff alleges two errors for review: 1) the ALJ failed to provide a proper narrative explanation for his assessment of Plaintiff's RFC; and 2) the ALJ failed to properly evaluate Plaintiff's subjective complaints. (Docket No. 9 at 7). In response, the Commissioner argues the ALJ properly developed his RFC finding and considered Plaintiff's subjective complaints. (Docket No. 13 at 6–12).

## The ALJ's Narrative Discussion

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the

5

case record. *Id*. He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

The ALJ began the RFC discussion by stating that he considered Plaintiff's symptoms, the objective medical evidence, medical opinions, prior administrative medical findings, and other evidence. (R. 459). He then addressed Plaintiff's function report from December 2018, (R. 459–60) (citing R. 223–30), and her administrative hearing testimony, (R. 460) (referencing 469–85). The ALJ noted Plaintiff's reports of "difficulty with lifting, standing, bending, squatting, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using her hands." (R. 459) (citing 223–30). However, she was able to do some activities of daily living, including folding laundry, doing the dishes, cooking, and driving. (R. 460). Ultimately, the ALJ determined Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms, [were] inconsistent because the totality of the evidence does not support [Plaintiff's] allegations of disabling pain or functional impairment." *Id.*

As to the medical evidence, the ALJ first discussed a consultative physical examination performed by Benjamin Roberts, D.O., on May 24, 2017.[3] *Id.* (citing 264–74). Plaintiff's primary

---

[3] The Court notes Plaintiff's correct assertion that the ALJ incorrectly stated that these records demonstrate that Plaintiff's "pulses were equal throughout." (R. 460). Dr. Roberts assessed Plaintiff as having unequal pedal pulses of 2+ on her left and 1+ on her right. (R. 268, 270). However, Plaintiff makes no argument as to how this error impacts the validity of the RFC assessment. *See Richards v. Colvin*, 640 F. App'x 786, 792 (10th Cir. 2016) (declining to consider

complaints consisted of back pain, which radiated down her left leg, knee pain, and chest pain. (R. 264). Plaintiff described the back pain as constant, rating it four or five out of ten. *Id.* Dr. Roberts found Plaintiff had a normal gait with normal speed and stability and did not require an assistive device to ambulate. (R. 265). He assessed Plaintiff with back pain with radiculopathy, bilateral knee pain, chest pain, and tobacco use disorder. *Id.*

The ALJ also discussed Plaintiff's records from her care with Hae-Jean Jung-Peters, D.O. (R. 461). On November 30, 2017, Dr. Jung-Peters reported Plaintiff's ambulation, tone, and motor strength as normal, although she also had limited range of motion and tenderness in her back and knees. *Id.* (citing R. 296). That same day, Plaintiff's x-rays revealed a normal sacrococcygeal series, facet arthrosis of the lumbar spine, and early degenerative changes of the knees. *Id.* (citing R. 275–90). Dr. Jung-Peters assessed Plaintiff with osteoarthritis, lumbosacral radiculitis, alopecia, and fatigue. (R. 296–97). Plaintiff saw Dr. Jung-Peters again on January 4, 2018, for right knee problems. (R. 291–95). Plaintiff had taken the medication Meloxicam and tried alternating the application of heat and cold to treat her right knee pain. (R. 461) (citing R. 293). However, her pain had not improved. *Id.* Although Plaintiff's gait was normal, her ambulation and range of motion were limited due to pain. *Id.* Dr. Jung-Peters assessed Plaintiff with osteoarthritis of the knee, neuropathy, vitamin D deficiency, and arthropathy of the lumbar facet joint. (R. 461) (citing R. 293–94). During the same visit, Plaintiff received an injectable medication, Kenalog, for her right knee and was prescribed the medication Gabapentin. (R. 293).

Plaintiff also received a magnetic resonance imagining ("MRI") of her lumbar spine on

---

argument that was inadequately raised in opening brief on appeal) (citing *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("'[C]ursory statements, without supporting analysis and case law' are insufficient to invoke [review]")). Therefore, the Court acknowledges the ALJ's misstatement, but makes no further findings regarding the error.

January 18, 2018.  (R. 461) (citing R. 298–99).  Overall, the impression from the MRI was multilevel degenerative spondylosis and grade 1 degenerative spondylolisthesis at L4-5 with moderate central canal stenosis.  *Id.*

The ALJ declined to include a discussion as to Plaintiff's other records, as they were dated after December 31, 2017, Plaintiff's date last insured.  (R. 461).  He then acknowledged the opinions of state agency consultants Ronald Painton, M.D. and Karl Boatman, M.D., neither of whom gave an opinion as to Plaintiff's RFC due to there being insufficient evidence prior to December 31, 2017.  (R. 46–62) (citing R. 55–73).

In conclusion, the ALJ found Plaintiff's RFC "accommodates [her] physical impairments and is adequate to address the location, duration, frequency, and intensity of [her] bona fide symptoms, as well as any reasonably anticipated aggravating and precipitating factors."  (R. 462).  He found Plaintiff's subjective complaints to be inconsistent with the evidence, recognizing that the amount of evidence during the relevant period is limited.  *Id.*  He also noted Plaintiff's receipt of minimal medical treatment.  *Id.*  The ALJ then stated that the previously mentioned radiology reports did not support Plaintiff's alleged limitations and that the lumbar MRI supported a light exertion level consistent with the RFC.  *Id.*  As to Plaintiff's postural limitations, the ALJ concluded Plaintiff's obesity and knee x-rays support such RFC limitations.  *Id.*  Lastly, the ALJ reiterated Plaintiff's testimony as to her activities of daily living, specifically mentioning her ability to do laundry, cook, clean dishes, drive, and perform most of her own personal care.  (R. 462).

The Court disagrees with Plaintiff that the ALJ failed to adequately explain how the medical and non-medical evidence supports the RFC assessment and thus violated SSR 96-8p. The ALJ provided a thorough review of the relevant evidence and explained how the evidence,

8

including the radiology reports, MRI, and knee x-rays, supported his findings. Additionally, the ALJ is not required to discuss every piece of evidence, *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (citing *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007)), nor articulate "a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Thus, although Plaintiff may disagree with the ALJ's interpretation of the evidence, the Court finds that the ALJ's conclusions are supported by substantial evidence. To conclude otherwise would result in the Court's reweighing of the evidence, which it cannot do. *See Casias*, 933 F.2d at 800.

### The ALJ's Consistency Determination

When evaluating a claimant's symptoms, the ALJ uses a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7–8.

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. However, an ALJ's findings "should be closely and affirmatively linked to substantial

9

evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence he relies on in evaluating the [consistency of the claimant's subjective complaints],' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). Thus, the use of conclusory language is "problematic only when it appears 'in the absence of a more thorough analysis.'" *Id*. at 1170 (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)).

As part of the evaluation of Plaintiff's subjective complaints, the ALJ outlined the two-step process set forth in SSR 16-3p and the requirements of 20 C.F.R. § 404.1529. (R. 459). He then summarized Plaintiff's Adult Disability Report, a function report from December 2018, and her administrative hearing testimony. (R. 459–60) (citing R. 223–30, 469–85). The ALJ considered Plaintiff's reports of "difficulty with lifting, standing, bending, squatting, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using her hands." (R. 459) (citing 223–30). However, she was able to do some activities of daily living, including folding laundry, shopping, doing the dishes, cooking, managing her finances, and driving. (R. 459–60).

The ALJ then discussed Plaintiff's testimony from the December 2022 administrative hearing. (R. 460) (referencing R. 469–85). Without further specificity, he stated that Plaintiff "testified to how long she could currently stand, walk, and sit and what her current medical treatment involved." *Id.* He then reiterated the activities of daily living that Plaintiff could perform in 2017, noting that she now requires assistance getting in and out of the bathtub. *Id.* The ALJ mentioned Plaintiff's current capabilities, including that "she spends her day doing nothing other than preparing meals minimally[,]" and "drives to her mom's 3-4 times a week." *Id.* Lastly, he

noted that Plaintiff's current treatments include steroid injections and ablations and that "[n]o surgery has been recommended." (R. 460).

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* However, he also determined that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms, [were] inconsistent because the totality of the evidence does not support [Plaintiff's] allegations of disabling pain or functional impairment." *Id.* Additionally, he found that Plaintiff's "treatment history, as discussed below, [was] not indicative of someone with her alleged level of pain or limitation from impairment." *Id.*

The ALJ proceeded through a summary of Plaintiff's medical records, as detailed previously in this Opinion and Order. His discussion demonstrates that the ALJ considered Plaintiff's activities of daily living; the location, duration, frequency, and intensity of her pain; factors that precipitate and aggravate her symptoms; the type, dosage, effectiveness, and side effects of her pain medications; and use of other treatments. For instance, the ALJ recognized that Plaintiff's medical records from May 2017 indicated that standing and walking made Plaintiff's pain worse and that she leaned on a cart when grocery shopping. (R. 460) (citing R. 264–65). However, those same records also documented Plaintiff's gait as normal and stable with no limp present, noting that she moved without use of an assistive device. *Id.* Plaintiff's gait and station were again assessed as normal in January 2018. (R. 461) (referencing R. 293). Additionally, the ALJ mentioned Plaintiff's receipt of Kenalog injections and ablations and her prescriptions for Gabapentin, Flexeril, Meloxicam, and prescription strength ibuprofen. (R. 460–61) (referencing R. 477, 481). He also found that, overall, Plaintiff had received "minimal medical treatment for . . . her alleged impairments." (R. 462).

11

The ALJ's decision allows for meaningful review in satisfaction of SSR 16-3p. Thus, because the ALJ conducted an appropriate analysis of Plaintiff's alleged symptoms and cited to evidence in support of his consistency determination, the Court cannot determine that the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 17th day of April, 2024.

           MARK T. STEELE, MAGISTRATE JUDGE
           UNITED STATES DISTRICT COURT